16 F.3d 1079
 RICO Bus.Disp.Guide 8557
 Odell FOX, and Sharon Fox, Plaintiffs-Appellants,
v.
Dwight M. MAULDING; Walter E. Brown; John B. Clark; Mike
Bezanson; Mark A. Gish; Wiley W. Smith; C.F. Bartlett;
H.I. Bartlett; B.B. Bingman; J.M. Bingman; E.D. Hamilton;
L.T. Jackson, Jr.; J.L. Robertson; J.M. Davis; Edward A.
Carson; J.W. Sherwood; Security National Bank of Sapulpa,
a national banking association; Security National
Bankshares of Sapulpa, Inc., Defendants-Appellees.
 No. 92-5186.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 10, 1994.
 
 Joseph L. Hull, III, and Sandra Lefler Cole, Tulsa, Oklahoma, for Plaintiffs-Appellants.
 Jack B. Sellers and Jessie M. Huff of Jack B. Sellers Law Associates, Inc., Sapulpa, Oklahoma, for Defendant-Appellee Dwight M. Maulding; Sam T. Allen, III of Loeffler, Allen & Ham, Sapulpa, Oklahoma, for Defendant-Appellee Walter E. Brown; Gregory L. Mahaffey, J. Jayne Jarnigan, and Ted A. Ross of Mahaffey & Gore, P.C., Oklahoma City, Oklahoma, for all other Defendants-Appellees.
 Before SETH, BARRETT, and McKAY, Circuit Judges.
 McKAY, Senior Circuit Judge.
 
 
 1
 Plaintiffs appeal the district court's order of August 18, 1992, dismissing their action with prejudice after declining to exercise jurisdiction over the case pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[1] Plaintiffs challenge the district court's decision on procedural grounds, as well as on the merits. We reverse and remand for further consideration.
 
 
 2
 The Colorado River doctrine applies to "situations involving the contemporaneous exercise of concurrent jurisdictions ... by state and federal courts." Id. at 817, 96 S.Ct. at 1246. Although not a true form of abstention, see id.; Attwood v. Mendocino Coast Dist. Hosp., 886 F.2d 241, 243 (9th Cir.1989), the doctrine is often treated as a variety of abstention and is governed by the general principle that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," Colorado River, 424 U.S. at 813, 96 S.Ct. at 1244. The doctrine permits a federal court to dismiss or stay a federal action in deference to pending parallel state court proceedings, based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " Id. at 817, 96 S.Ct. at 1246 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).
 
 
 3
 The present lawsuit arises out of plaintiff Odell Fox's participation in various business ventures with Scott Wilmott and Dwight Maulding. The three formed a partnership called Glendale Acres and subsequently formed a corporation by the same name without first dissolving the partnership. Both entities engaged in real estate investment. Most of the business ventures were financed by Security National Bank of Sapulpa (SNB), of which Maulding was an officer and director.
 
 
 4
 In 1986, Maulding brought an action in state court (# C-86-414) for a dissolution, winding up, and accounting of both the partnership and the corporation. He named Odell Fox and Scott Wilmott, as well as their respective wives, as defendants. Odell answered that he had no interest in either the partnership or the corporation, having conveyed everything to his wife, Sharon Fox. Sharon filed counterclaims against Maulding to collect on two promissory notes he had executed and filed a cross-claim against Wilmott challenging any interest he might assert in one of the notes.
 
 
 5
 In 1988, SNB filed suit against Odell and Sharon Fox in state court (# C-88-51-D) to recover on a note secured by the Foxes' residence and to foreclose on the mortgage. Maulding signed the documents on behalf of SNB. When the Foxes failed to respond to SNB's motion for summary judgment, SNB obtained both a default judgment against the Foxes and an order for foreclosure.
 
 
 6
 In October 1989, Odell filed a pro se action against Maulding and SNB (# C-89-609) in which he alleged that the two had converted $18,888.39 of his money. Odell also alleged that the defendants had extorted a kickback from him in exchange for giving him a loan, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-68. Odell sought a writ of replevin on the conversion claim and sought damages on the RICO claim. The defendants entered special appearances in the case and moved to dismiss for lack of personal jurisdiction, as well as for failure to state a claim.
 
 
 7
 In December 1989, Odell filed a second pro se action against Maulding and SNB (# C-89-743) in which he alleged the defendants had engaged in various fraudulent acts relating to their business dealings with him. Odell sought compensatory and punitive damages for the defendants' wrongdoing.
 
 
 8
 By 1990, all four cases were pending before Judge Woodson and an independent CPA was proceeding with the accounting for the partnership and corporation. On May 23, 1991, Odell and Sharon filed the present action in federal court against Maulding, SNB, and others, alleging claims for RICO violations, fraud, constructive fraud, and intentional infliction of mental anguish. On May 31, 1991, counsel entered an appearance in state court on behalf of Odell and moved to dismiss the two cases Odell had instituted pro se (# C-89-609 and # C-89-743). By the time the federal district court considered Maulding's motion to dismiss the federal action pursuant to the Colorado River doctrine, the only state proceedings still ongoing were those involving the dissolution and winding up of Glendale Acres and the foreclosure of the mortgage on the Foxes' residence.
 
 
 9
 "[T]he decision whether to defer to the state courts is necessarily left to the discretion of the district court in the first instance." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983). Such discretion, however, "must be exercised under the relevant standard prescribed by [the Supreme] Court." Id. In Colorado River, the Court held that, in light of
 
 
 10
 the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them ... and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention.
 
 
 11
 424 U.S. at 817-18, 96 S.Ct. at 1246 (citations omitted). Thus, declining to exercise jurisdiction based on the Colorado River doctrine is appropriate only in "exceptional" circumstances. Id. at 818, 96 S.Ct. at 1246; Moses H. Cone, 460 U.S. at 19, 103 S.Ct. at 938.
 
 
 12
 The Supreme Court has set forth a number of factors for a court to consider in determining whether "exceptional circumstances" exist. Before examining these factors, however, a federal court must first determine whether the state and federal proceedings are parallel. See Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698, 700 (7th Cir.1992); New Beckley Mining Corp. v. International Union, UMWA, 946 F.2d 1072, 1073 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1587, 118 L.Ed.2d 306 (1992). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." New Beckley Mining Corp., 946 F.2d at 1073.
 
 
 13
 Some courts, in determining whether state and federal proceedings are parallel, seem to consider how the state proceedings could have been brought in theory, i.e., what claims and parties could have been included had the federal plaintiff made a timely application to do so, and compare the theoretical state proceedings to the federal proceedings. E.g., Rosser v. Chrysler Corp., 864 F.2d 1299, 1308 (7th Cir.1988); Telesco v. Telesco Fuel & Masons' Materials, Inc., 765 F.2d 356, 359 (2d Cir.1985). We, however, believe that the better approach is to examine the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings. McLaughlin v. United Va. Bank, 955 F.2d 930, 935-36 (4th Cir.1992); Crawley v. Hamilton County Comm'rs, 744 F.2d 28, 31 (6th Cir.1984).
 
 
 14
 The latter approach heeds the Supreme Court's admonition in Moses H. Cone that to grant a stay or dismissal under the Colorado River doctrine would be "a serious abuse of discretion" unless "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties.... [T]he decision to invoke Colorado River necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." 460 U.S. at 28, 103 S.Ct. at 943 (citations omitted).
 
 
 15
 "[T]he existence of proceedings in state court does not by itself preclude parallel proceedings in federal court," however. New Beckley Mining Corp., 946 F.2d at 1073. Thus, if a federal court determines the state and federal proceedings are parallel, it must then determine whether deference to state court proceedings is appropriate under the particular circumstances.
 
 
 16
 In Colorado River, the Supreme Court set forth a nonexclusive list of factors for courts to consider in deciding whether "exceptional circumstances" exist to warrant deference to parallel state proceedings: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction. 424 U.S. at 818, 96 S.Ct. at 1246. The Court discussed several other factors in Moses H. Cone, such as the vexatious or reactive nature of either the federal or the state action, 460 U.S. at 18 n. 20, 103 S.Ct. at 938 n. 20; whether federal law provides the rule of decision, id. at 23, 103 S.Ct. at 941; and the adequacy of the state court action to protect the federal plaintiff's rights, id. at 28, 103 S.Ct. at 943. Other courts also have considered whether the party opposing abstention has engaged in impermissible forum-shopping. See, e.g., Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1370-71 (9th Cir.1990).
 
 
 17
 No single factor is dispositive; "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." Moses H. Cone, 460 U.S. at 16, 103 S.Ct. at 937. Rather than use the factors as a "mechanical checklist," a court should engage in "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Id. Indeed, since "[o]nly the clearest of justifications will warrant dismissal," Colorado River, 424 U.S. at 819, 96 S.Ct. at 1247, any doubt should be resolved in favor of exercising federal jurisdiction, see Travelers Indem. Co., 914 F.2d at 1369.
 
 
 18
 Needless to say, if we are to conduct any meaningful review of a district court's exercise of discretion under the Colorado River doctrine, the court must make its findings about the parallel nature of the state and federal proceedings and the balance of the factors on the record. The district court here, however, simply announced that "this matter should be dismissed pursuant to the Colorado River Doctrine." Appellants' App., Vol. IV, at 780. The court did not indicate why the state and federal proceedings were parallel, which factors it considered, if any, or what weight it gave to any factor.
 
 
 19
 Absent findings by the district court, "we are left with no means by which to judge the exercise of the court's discretion." Griffen v. City of Oklahoma City, 3 F.3d 336, 340 (10th Cir.1993). We decline to determine in the first instance whether deference to the state court proceedings is warranted, for to do so would overstep the bounds of our review for abuse of discretion and enter the realm of de novo review. Therefore, we must remand the action to the district court for further consideration. See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 13 (1st Cir.1990) (Villa Marina I ).
 
 
 20
 On remand, the district court must first determine whether the state and federal proceedings are parallel and, if they are, whether extraordinary circumstances warrant withholding the exercise of federal jurisdiction. If the court determines exceptional circumstances do exist, it must then consider the appropriate remedy. The Supreme Court has declined to address whether deference to state court proceedings under the Colorado River doctrine should result in a stay or a dismissal of the federal action. Arizona v. San Carlos Apache Tribe, 463 U.S. 545, 570 n. 21, 103 S.Ct. 3201, 3215 n. 21, 77 L.Ed.2d 837 (1983); Moses H. Cone, 460 U.S. at 28, 103 S.Ct. at 943.
 
 
 21
 The district court here dismissed the federal action with prejudice. Some courts have approved dismissals, though whether with or without prejudice is not clear. Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 531 (1st Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1674, 118 L.Ed.2d 393 (1992) (Villa Marina III ); American Disposal Servs., Inc. v. O'Brien, 839 F.2d 84, 85 (2d Cir.1988).
 
 
 22
 We think the better practice is to stay the federal action pending the outcome of the state proceedings. Attwood, 886 F.2d at 243; Rosser, 864 F.2d at 1308-09; Mahaffey v. Bechtel Assocs. Professional Corp., 699 F.2d 545, 546-47 (D.C.Cir.1983); Allen v. Louisiana State Bd. of Dentistry, 835 F.2d 100, 105 (5th Cir.1988), cert. denied, --- U.S. ----, 112 S.Ct. 1764, 118 L.Ed.2d 426 (1992). In the event the state court proceedings do not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action.
 
 
 23
 The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED, and the case is REMANDED for further proceedings in accordance with this opinion.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument