**FEDERATED RURAL ELECTRIC INSURANCE COMPANY,**
Plaintiff,

v.

**INTERNATIONAL INSURANCE COMPANY and Nationwide Mutual Insurance Company, Defendants.**

No. 94–2460–JWL.

United States District Court,
D. Kansas.

April 13, 1995.

Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for plaintiff.

Anthony F. Rupp, Charles J. Hyland, Shughart, Thomson & Kilroy, Overland Park, KS, Robert A. Henderson, Shughart, Thomson & Kilroy, Kansas City, MO, Edward F. Ruberry, Bryan G. Schumann, Jay Davis, Bollinger, Ruberry & Garvey, Chicago, IL, for International Ins. Co.

Michael G. Norris, Norris & Keplinger, L.L.C., Overland Park, KS, for Nationwide Mut. Ins. Co.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

#### I. Introduction

This case involves an action by plaintiff Federated Rural Electric Insurance Company ("Federated") against defendants Nationwide Mutual Insurance Company ("Nationwide") and International Insurance Company ("International") in which Federated seeks judgment as an insured under separate insurance policies issued by defendants. The matter is currently before the court on the following motions: (1) defendant Nationwide's motion to dismiss or, in the alternative, to stay (Docs. # 11–1 and 11–2); (2) defendant International's motion to stay (Doc. # 16); and (3) plaintiff Federated's motion to certify questions of law to the Kansas Supreme Court (Doc. # 18).

The court has carefully analyzed the parties' pleadings and applicable law. For the reasons set forth below, defendant Nationwide's motion to dismiss is granted as to Count IV of the complaint and otherwise denied. Defendant International's motion to stay and plaintiff Federated's motion to certify are denied.

#### II. Factual Background

Plaintiff Federated and defendants Nationwide and International are all insurance companies. Federated is a corporation organized under the laws of the state of Wisconsin with its corporate headquarters located in Lenexa, Kansas. Nationwide is a corporation organized under the laws of the state of Ohio. International is a corporation organized under the laws of the state of Illinois, with its principal place of business in the state of Illinois.

On or about August 1, 1976, Federated and Nationwide entered into a Reinsurance Agreement (also referred to as the "Reinsurance Treaty") whereby Nationwide agreed to indemnify Federated with respect to the excess ultimate net loss Federated might incur as a result of covered losses. On or about March, 1989, International issued a professional liability insurance policy (the "International Policy") to Federated with effective dates of March 23, 1989 to March 23, 1990. The International Policy insured Federated for such things as "loss caused by . . . claims handling and adjusting." The International Policy is independent of the Nationwide Reinsurance Treaty and International has no relationship to Nationwide. The policies provide two separate, independent sources of potential coverage to Federated.

On or before May 1, 1978, Co–Mo Electric Cooperative, Inc. ("Co–Mo") purchased a primary commercial umbrella liability insurance policy from Federated which provided Co–Mo with liability coverage in the total amount of $1,500,000.00 for injuries and damages suffered by persons as a result of the alleged negligence of Co–Mo or its employees. Co–Mo was sued in 1979 for personal injuries suffered by James Routon allegedly as a result of Co–Mo's negligence. Federated, as Co–Mo's insurer, undertook Co–Mo's defense in the suit and allegedly committed bad faith by (among other things) not settling the case before Co–Mo lost at trial. Co–Mo brought a bad faith action against Federated on May 25, 1990 alleging that Federated retained exclusive control over the defense and han-

dling of settlement negotiations in the Routon case and failed to settle the case within policy limits. Co–Mo sought punitive damages, attorney's fees, costs and expenses, along with pre and post judgment interest. On May 26, 1992, a stipulated judgment was entered between Federated and Co–Mo. The stipulated judgment awarded Co–Mo $1,837,191.78 for covered losses under the policy and $762,808.22 for extra losses outside of the coverage of Federated's policy. The present suit seeks to hold International and Nationwide responsible, in part, for the stipulated judgment.

Federated's complaint contains four counts. Count I is a declaratory judgment claim in which Federated seeks a determination that the International Policy covers the extra contractual loss and expenses sustained by Federated in connection with Co–Mo's bad faith claim. Count II is a breach of contract claim against International in which Federated contends that International breached its contractual obligations to Federated under the International Policy in refusing to compensate Federated for the extra contractual loss sustained by Federated in connection with Co–Mo's bad faith claim and seeks judgment against International in the amount of $854,477.08, together with its costs, attorney's fees and interest. Count III is a breach of contract claim against Nationwide in which Federated contends that Nationwide has failed to reimburse Federated for amounts owed under the applicable Reinsurance Treaty and that Nationwide has failed to reimburse Federated for amounts incurred as losses and expenses associated with the Routon claim covered under the policies issued to Co–Mo and seeks judgment in the amount of $1,685,501.33, together with its costs, attorney's fees and interest. Finally, Count IV seeks a declaratory judgment that arbitration clauses in the Nationwide Reinsurance Treaty are void and unenforceable under the laws of the state of Kansas.

Article XIV of the Nationwide Reinsurance Treaty contains an arbitration clause. The clause reads as follows:

> If any dispute shall arise between the Company and the Reinsurer, either before or after the termination of this Agreement, with reference to the interpretation of this Agreement or the rights of either party with respect to any transaction under this Agreement, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen. If either refuses or neglects to appoint an arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators who shall choose the third. In the event the two arbitrators do not agree on the selection of the third arbitrator within thirty (30) days after both arbitrators have been named, the Company shall petition the American Arbitration Association to appoint an arbitrator.
>
> Each party shall submit its case to the arbitrators within thirty (30) days of the appointment of the arbitrators. The arbitrators shall consider the Agreement an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of Law.
>
> The decision in writing of a majority of the arbitrators shall be final and binding on both the Company and the Reinsurer. The expense of the arbitrators and of the arbitration shall be equally divided between the Company and the Reinsurer. Any such arbitration shall take place in Columbus, Ohio unless some other location is mutually agreed upon by the parties. It is expressly agreed that the jurisdiction of the arbitrators to make or render any decision or award shall be limited by the limits of liability expressly set forth herein, and that the arbitrators shall have no jurisdiction to make any decision or render any award exceeding such expressly stated liability limit of the reinsurers subscribing to this Agreement.

Prior to the filing of this action by Federated, International filed suit against Federated and Nationwide on October 14, 1994 in the Circuit Court of Cook County, Case No. 94 CH 9437 (the "Illinois Action"). In the Illinois Action, International seeks a declaration that the International Policy does not cover the extra-contractual loss sustained by Fed-

erated in connection with Co–Mo's bad faith claim and, alternatively, a declaration that International's Policy provides coverage for, at most, 25% of the extra-contractual loss sustained by Federated, with the National Reinsurance Treaty covering the other 75%.

### III.  Discussion

#### A.  Nationwide's Motion to Dismiss or, in the Alternative, to Stay

In its motion, Nationwide moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the instant action on the grounds that Federated has failed to state a claim upon which relief may be granted. Specifically, Nationwide contends that the arbitration clause contained in Article XIV of the Reinsurance Treaty should be enforced and that, accordingly, Federated may not bring any action against it apart from the arbitration procedure provided for in the Reinsurance Treaty and that this action should therefore be dismissed. As an alternative ground for relief, Nationwide contends that this court should stay the instant action pending the resolution of the Illinois Action.[1]

A court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir. 1991). The pleadings are liberally construed, and all reasonable inferences are viewed in favor of the plaintiff. Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir.1993). "All well-pleaded facts, as distin-

guished from conclusory allegations, must be taken as true." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ In Count IV of its complaint, Federated seeks a determination that the arbitration clause contained in Article XIV of the Reinsurance Treaty is void and unenforceable under the laws of the state of Kansas, specifically K.S.A. § 5–401.[2] Nationwide, on the other hand, argues that the arbitration provisions are enforceable because, under the appropriate choice of law analysis, Ohio law, rather than Kansas law, applies to the Reinsurance Treaty and, because Ohio law contains no exclusion of insurance contracts from the arbitration agreements treated as valid and enforceable, there is no basis for precluding application of the Federal Arbitration Act ("FAA") to the arbitration provisions.[3]

The arguments made by the parties here are identical to the arguments they made in an earlier case that was heard by now Chief Judge Van Bebber of this court. In September, 1994, Federated filed another action in this court styled *Federated Rural Electric Insurance Company v. Nationwide Mutual Insurance Company,* Case No. 94–2351–GTV. That action, since transferred to Ohio, arose in part out of the same Reinsurance Treaty as is involved in the present case. In an order dated January 24, 1995 ruling on . Nationwide's motion to dismiss, Judge Van Bebber dismissed Federated's count for de-

---

**1.** Nationwide's requested relief that this court stay the pending action will be discussed in connection with International's motion to stay, which seeks a stay on identical grounds.

**2.** K.S.A. § 5–401 provides as follows:
  (b) Except as provided in subsection (c), a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract.

  (c) The provisions of subsection (b) shall not apply to: (1) contracts of insurance ...

**3.** The FAA, 9 U.S.C. §§ 1–14, makes written arbitration provisions valid, irrevocable, and enforceable, except upon grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. The FAA has preemptive effect and has been held to preempt state laws that preclude parties from submitting matters to arbitration. *See Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

claratory relief, holding that the arbitration provision in the identical Reinsurance Treaties at issue in that case (one of which was the same Reinsurance Treaty at issue in the present case) were not void under Kansas law. *Federated Rural Elec. Ins. Co. v. Nationwide Mut. Ins. Co.*, 874 F.Supp. 1204 (D.Kan.1995).

In the January 25, 1995 order, Judge Van Bebber first analyzed whether federal or state law should be applied to determine the enforceability of the arbitration clause. *Id.* at 1206. Judge Van Bebber, following an analysis of the interplay between the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–14 and the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, concluded that if a state has a law that prohibits arbitration in disputes involving the insurance business, the FAA's preemptive effect may be precluded by the McCarran–Ferguson Act. Judge Van Bebber noted that the Tenth Circuit had held that K.S.A. § 5–401, combined with the McCarran–Ferguson Act, operated to preclude the application of the FAA. *Id.* at 1207 (*citing Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co., Inc.*, 969 F.2d 931 (10th Cir.) *cert. denied,* —— U.S. ——, 113 S.Ct. 604, 121 L.Ed.2d 540 (1992)).

However, Judge Van Bebber held that Federated's argument that the arbitration clauses in the Reinsurance Treaties were unenforceable ultimately failed because, under the appropriate choice of law analysis, Ohio rather than Kansas law applied to the Reinsurance Agreement. *Id.* Judge Van Bebber noted that the Reinsurance Treaty was issued in Ohio, and the parties agreed that applying the rule of *lex loci contractus* resulted in Ohio law governing the interpretation of the Treaties. *Id.* at 1207. Judge Van Bebber further noted that Ohio's version of the Uniform Arbitration Act contained no exclusion of insurance contracts from the arbitration agreements treated as valid and enforceable, and the parties had not identified any other Ohio law which may be interpreted to exclude insurance disputes from the scope of enforceable arbitration. *Id.*

Finally, Judge Van Bebber rejected Federated's argument that Kansas court's would refuse to enforce the arbitration provisions as being against Kansas public policy. Federated cited *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 777 P.2d 1259 (1989) for the proposition that Kansas will not apply the law of another state if that law contravenes public policy. *Id.* However, Judge Van Bebber noted that not every Kansas statutory provision has been held to represent the strong type of public policy that would bar application of another jurisdiction's contrary law. *Id.* at 1207 (citing cases). Judge Van Bebber noted that the plaintiff was asking the court to declare void and unenforceable provisions of insurance policies issued in another state which were enforceable not only under that state's laws, but also under federal statute. *Id.* at 1208. The court concluded that the Kansas public policy expressed in K.S.A. § 5–401 had no such effect. *Id.*

■ Following a careful analysis of the parties' briefs in the present case, along with the applicable statutory and case law, this court concludes that Judge Van Bebber's order of January 25, 1995, which held that the arbitration provisions contained in the Reinsurance Treaty were not void under Kansas law, was correctly decided. The Reinsurance Treaty is properly analyzed under Ohio law, which does not provide for the exclusion of insurance disputes from the scope of enforceable arbitration. Further, the court agrees with Judge Van Bebber's conclusion that the Kansas public policy expressed in K.S.A. § 5–401 would not be interpreted by Kansas courts to render the arbitration provisions, which are valid under both Ohio law and federal statute, unenforceable. *See Federated,* 874 F.Supp. at 1207–08.

The court concludes, based on the facts presented in plaintiff's complaint, that a declaratory judgment finding that the arbitration provisions are void and unenforceable would be contrary to law. Count IV of Federated's complaint will therefore be dismissed. The court finds no basis, however, for dismissing Count III of the Complaint. Count III is Federated's breach of contract claim in which it alleges that Nationwide failed to reimburse Federated for losses covered by the Reinsurance Treaty. Dismissal of the underlying breach of contract claim is

not warranted based on the court's finding that the arbitration provisions are not void under Kansas law. There is no motion to compel before the court and, even if the court were to order arbitration, the underlying claim would be stayed pending arbitration, pursuant to the FAA, and not dismissed. *See* 9 U.S.C. § 3.

## B. Federated's Motion to Certify

■ Federated urges that this court should certify to the Kansas Supreme Court the question of whether Kansas public policy would render the arbitration provisions unenforceable.[4] Federated argues that Judge Van Bebber did not in fact reach the issue of whether Kansas has a strong public policy precluding the enforcement of the arbitration clause and that, due to the fact that there is no guidance in the opinions of the appellate courts of the state of Kansas, this court should certify the question of law to the Kansas Supreme Court.

This court believes that Federated is mistaken in its assertion that Judge Van Bebber did not reach the issue of whether Kansas public policy would preclude enforcement of the arbitration clause. Judge Van Bebber clearly did find that Kansas public policy would not render the arbitration provisions unenforceable. *Federated*, 874 F.Supp. at 1207–08. While Judge Van Bebber's ruling is not necessarily binding on this court, it is highly persuasive and this court has also independently reviewed the cases relied on by Judge Van Bebber to come to the same conclusion. Because this court finds that there is sufficient guidance to rule on this issue, Federated's motion for certification is denied.

## C. International's Motion to Stay

■ In its motion to stay, International argues that this case should be stayed because it is duplicative of the pending Illinois

Action.[5] This court has discretion as to whether to defer to the state court. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 19, 103 S.Ct. 927, 938–39, 74 L.Ed.2d 765 (1983) Such discretion, however, "must be exercised under the relevant standard prescribed by the [Supreme] Court." *Id.*

In an order in another case dated November 23, 1994, under factual circumstances nearly identical to the present case, this court denied a defendant's motion to stay the case due to the fact that it duplicated an action filed by the defendant in state court. *Pope v. Kanmap, Inc.*, 1994 WL 680235 (D.Kan.1994). In the *Pope* order, this court undertook a lengthy analysis of the relevant legal standards to consider in determining whether this court should decline to exercise jurisdiction because the duplicative nature of an action in this court with one previously filed in a state court. In the *Pope* order, this court, relying on *Fox v. Maulding*, 16 F.3d 1079 (10th Cir.1994), first determined that the state and federal proceedings were parallel because the same parties were litigating substantially the same issues in different forums. This court then determined whether deference to the state court proceedings was appropriate under the particular circumstances of the case pursuant to the relevant factors set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1993); and *Fox v. Maulding*, 16 F.3d 1079 (10th Cir.1994). This court noted that most of the factors deemed relevant under the Colorado River analysis were neutral in the *Pope* case. Having analyzed the factors deemed relevant under Colorado River, this court found that the *Pope* case did not constitute "extraordinary" circumstances warranting deference to the state court pro-

---

4. K.S.A. § 60-3201 provides, in part:
   The Kansas supreme court may answer questions of law certified to it by ... a United States district court ... if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court

   there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

5. Nationwide also seeks a stay of this action based on the pending Illinois Action as alternative relief in its motion to dismiss.

ceeding. Finally, this court determined that the rule enumerated in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) did not warrant abstention in the *Pope* action.

The court finds that the motions by defendants International and Nationwide to dismiss or stay the present action due to the concurrent Illinois Action should be denied for the same reasons this court enumerated in denying the defendant's motion for stay in *Pope*. The court finds that the present action and the Illinois Action are parallel due to the fact that the same parties are litigating substantially the same issues. However, as was the case in *Pope*, the relevant factors in the Colorado River analysis are mostly neutral. Neither court has assumed jurisdiction over any property, there is no indication that the federal forum in Kansas City is any more or less convenient on balance than the state forum in Illinois, and there is no indication that the federal action was filed in a vexatious or reactive manner.

■ In support of its contention that the federal action should be stayed, International emphasizes that the state action was filed first. However, as this court found in *Pope*, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Cone*, 460 U.S. at 21, 103 S.Ct. at 940. No evidence has been presented to the court that any significant progress has been made in the Illinois action.

■ Having analyzed the factors deemed relevant in Colorado River, the court does not believe that the present situation constitutes "extraordinary" circumstances as defined in that case. If the court were to refrain from exercising jurisdiction in this case, the court would have to base its decision mainly on the fact that the concurrent proceedings constitute a waste of resources combined with the fact that the state action was filed approximately one month before the federal action. For the reasons discussed above, the fact the state action was filed prior to this action bears little on our decision. That leaves the allocation of resources as the main grounds for staying or dismissing the action. However, as this court found in *Pope*, this ground alone is not sufficient to constitute "exceptional" circumstances sufficient to justify surrender of this court's jurisdiction.

■ International makes an additional argument that this court should stay the present action because Federated requests a declaratory judgment that is duplicative of the Illinois Action. International relies on *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). In that case, the Supreme Court held that when a declaratory judgment is requested, the district court is "under no compulsion to exercise that jurisdiction if the controversy might be settled more expeditiously in state court." *Id.* at 494, 62 S.Ct. at 1175. This identical argument was addressed by this court in *Pope*, wherein this court found that the instances where federal courts have abstained in declaratory judgment actions usually involve an instance in which there is ongoing state court litigation in which the same fact-dependent issues are likely to be decided and the declaratory judgment in the federal action would have the possibility of adversely affecting the ongoing, underlying state court litigation. In this case, as in *Pope* and unlike those cases which rely on *Brillhart*, there is no ongoing litigation in which the underlying controversy might be settled more expeditiously or appropriately. Rather, both the federal and state forums are equally capable and prepared to proceed with the matter. The court has not found a single instance in which a federal court has refrained from exercising jurisdiction in a declaratory judgment action simply because there was another declaratory judgment action, identical in all respects to the federal action, pending in another jurisdiction. Thus, for the identical reasons stated in *Pope*, this court finds that *Brillhart* does not mandate that this court refrain from exercising jurisdiction. Rather, the court believes the question of whether it should refrain from exercising jurisdiction should be analyzed in the same manner as any other type of action would be under Colorado River. As discussed above, the court finds that defendants have not satisfied the Colorado River requirements. Thus, International's motion to stay and Nationwide's

motion to dismiss on the grounds that the present action is duplicative of the Illinois Action are denied.

*IV. Conclusion*

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** Nationwide's motion to dismiss, or in the alternative to stay (Docs. 11–1 and 11–2) is granted in part and denied in part. The motion is granted as to Count IV of Federated's complaint. The motion is otherwise denied.

**IT IS FURTHER ORDERED THAT** International's motion to stay (Doc. # 16) is denied.

**IT IS FURTHER ORDERED THAT** Federated's motion to certify questions of law (Doc. # 18) is denied.

**IT IS SO ORDERED.**