**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 11, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WAKAYA PERFECTION, LLC, a
Utah limited liability company;
TODD SMITH, an individual;
BLAKE GRAHAM, an individual;
DAVE PITCOCK, an individual;
BARB PITCOCK, an individual;
ANDRE VAUGH, an individual;
TOTAL NUTRITION, INC, d/b/a
TNT a Utah corporation,

    Plaintiffs - Appellants,

v.

YOUNGEVITY INTERNATIONAL,
INC., a California corporation;
STEVE WALLACH, an individual;
MICHELE WALLACH, an
individual; DAVE BRISKIE, an
individual,

    Defendants - Appellees.

-

No. 17-4178

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:16-CV-00315-DN)**
_____

Jonathan O. Hafen (Jonathan R. Schofield, Michael S. Anderson, and
Cynthia D. Love, with him on the briefs), of Parr Brown Gee & Loveless,
Salt Lake City, Utah, for Plaintiffs-Appellants.

Jonathan W. Emord (Peter A. Arhangelsky with him on the briefs), of
Emord & Associates, Gilbert, Arizona, for Defendants-Appellees.

Before **BACHARACH**, **EBEL**, and **MORITZ**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves the interplay between two related lawsuits. In the first one, Wakaya Perfection, LLC and its principals sued Youngevity International Corp. and its principals in Utah state court. The Youngevity parties responded by bringing their own suit against the Wakaya parties in a California federal district court and removing the Utah case to federal court. These steps resulted in concurrent federal cases sharing at least some claims and issues. For example, in both cases, the parties disagreed over whether Wakaya could bring its claims in court rather than in arbitration.

The California litigation progressed; and in November 2017, the federal district court in Utah ordered dismissal, holding that

- the court should abstain from exercising jurisdiction under the *Colorado River* test and

- an arbitrator would need to decide the arbitrability of Wakaya's claims.[1]

---

[1]    The district court also concluded that an arbitrator would need to decide the arbitrability of all of the Wakaya parties' claims. But the issue here involves the arbitrability of claims brought by Wakaya itself rather than the other Wakaya parties.

We reverse on both grounds: The court applied the wrong abstention test and erroneously ruled that an arbitrator should decide whether Wakaya's claims are arbitrable.

## Issues in the Appeal

**I.    The district court erroneously applied the *Colorado River* test in dismissing the Utah lawsuit.**

The district court erred in using an inapplicable test when deciding whether to dismiss the Utah lawsuit.

### A.    Reversal is necessary when the district court applies the wrong test.

We apply the abuse-of-discretion standard when reviewing a district court's decision to abstain from exercising jurisdiction over one of two duplicative federal cases. *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002). A district court abuses its discretion when it bases a decision on an erroneous legal conclusion. *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001); *see also Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 535 (10th Cir. 2016) (stating that a district court's application of the wrong legal standard constitutes an abuse of discretion). We must therefore reverse when the district court applies the wrong test. *See Sierra Club v. Cargill*, 11 F.3d 1545, 1548 (10th Cir. 1993) (reversing because the "[t]he district court abused its discretion" in applying "the wrong standard of review and, as a result, the wrong analytical framework").

**B.**      **The district court applied the wrong test by treating the *Colorado River* test as controlling on abstention when both cases are in federal court.**

The district court applied the abstention test set out in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). In this opinion, the Supreme Court recognized a narrow doctrine permitting a federal court to abstain from exercising jurisdiction when a parallel case exists in state court. *Colo. River*, 424 U.S. at 813. Given the narrowness of this doctrine, the *Colorado River* test requires "exceptional circumstances" and an "important countervailing interest" for a federal court to abstain from exercising jurisdiction based on pending litigation in state court. *Id.* (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (noting that "the balance [is] heavily weighted in favor of the exercise of [federal] jurisdiction" in a case involving state-federal concurrent litigation).

In this appeal, we must decide whether the *Colorado River* test controls when both of the cases are in federal court. We have recognized that the test applies when one of the cases is in *state* court. *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). In this circumstance, we have applied the *Colorado River* test and recognized eight pertinent factors:

     1.      the possibility that one of the two courts has exercised jurisdiction over property

4

2.      the inconvenience from litigating in the federal forum

3.      the avoidance of piecemeal litigation

4.      the sequence in which the courts obtained jurisdiction

5.      the "vexatious or reactive nature" of either case

6.      the applicability of federal law

7.      the potential for the state-court action to provide an effective remedy for the federal plaintiff

8.      the possibility of forum shopping.

*Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994).

Here, however, both of the parallel cases were pending in federal court. In this situation, courts elsewhere have held that the *Colorado River* test does not apply. *See Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953 (8th Cir. 2001) ("By its own terms, *Colorado River* applies only to concurrent state and federal litigation."); *Levy v. Lewis*, 635 F.2d 960, 967 (2d Cir. 1980) ("[I]t is clear . . . that abstention for purposes of judicial economy from exercising its jurisdiction under *Colorado River* applies only where concurrent federal-state jurisdiction exists."); *cf. Life-Link Int'l, Inc. v. Lalla*, 902 F.2d 1493, 1494 (10th Cir. 1990) (per curiam) ("[*Paris v. Affleck*, 431 F. Supp. 878 (M.D. Fla. 1977)] was a removal case regarding whether claims could be concurrently

5

litigated in two federal courts and, thus, is inapplicable to this case of concurrent litigation as between a state and a federal court.").[2]

These holdings comport with *Colorado River* itself in that the Supreme Court recognized the need for different approaches depending on whether the concurrent litigation involves

- parallel cases in federal courts or

- parallel cases in federal and state courts.

*Colo. River*, 424 U.S. at 817; *see also Missouri ex rel. Nixon*, 259 F.3d at 953 (observing that the Supreme Court had contrasted its holding in *Colorado River*, which focused on concurrent federal-state litigation, with cases involving concurrent federal litigation). The need for a difference in approaches stems from the different purposes underlying each type of abstention: When a federal district court defers in favor of another federal case, the only concern is venue because federal jurisdiction will be exercised in one of the two districts. As a result, "no precise rule" has

---

[2] Although the Utah action began in state court, the Youngevity parties removed the case prior to the dismissal. So at the time of the dismissal, the *Colorado River* test did not apply because the case was no longer in state court. *See Kirkbride v. Continental Cas. Co.*, 933 F.2d 729, 734 (9th Cir. 1991) (stating that the *Colorado River* "doctrine is inapplicable here because FDIC removed the entire case to federal court; therefore there was no concurrent or pending state court proceeding when the appellees moved for remand"); *Noonan South, Inc. v. Volusia Cty.*, 841 F.2d 380, 382 (11th Cir. 1988) (stating that the case did not fit within *Colorado River* abstention because the state-court action had been removed to federal court).

6

emerged to govern abstention when two federal district courts are addressing similar suits between the same parties. *Colo. River*, 424 U.S. at 817; *see Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011).

The Youngevity parties apparently recognized this distinction when seeking sanctions; there they acknowledged that the *Colorado River* factors are immaterial when both cases are pending in federal court:

> Furthermore, Youngevity did not address the *Colorado River* factors because those factors are irrelevant when two duplicative suits are pending in federal court. Those factors are relevant only when determining whether to dismiss a federal suit in favor of a concurrent state suit. Indeed, the Wakaya Parties concede that those factors would apply only where a federal court decides whether to dismiss a federal action in favor of a concurrent and duplicative *state* suit. In their Opening Appeal Brief, however, the Wakaya Parties argued that the district court misapplied those exact same factors in dismissing a concurrent federal suit. The Wakaya Parties now concede that those factors are inapplicable to concurrent duplicative federal proceedings.

Appellees' Reply to Appellants' Opp. to Mot. for Sanctions at 12 (citations omitted). But in their response brief, the Youngevity parties take a different approach, arguing that the *Colorado River* test applies even when both of the parallel cases are in federal court.

For this argument, the Youngevity parties rely on a single sentence in *United States v. Rice*, 605 F.3d 473 (8th Cir. 2010), insisting that it recognizes the applicability of *Colorado River* when both cases are in federal court. In *Rice*, the defendant argued unsuccessfully that the district court should have abstained under *Colorado River*. In rejecting this

7

argument, the Eighth Circuit Court of Appeals stated: "*Colorado River* abstention arises in limited 'situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts.'" *Id.* at 476 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

The Eighth Circuit was quoting part of a passage from *Colorado River*, where the Supreme Court had contrasted

- the principles supporting abstention in cases involving concurrent litigation and

- the principles supporting abstention in other situations.

The passage in *Colorado River* had stated:

> Although this case falls within none of the abstention categories [that we have previously recognized], there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Generally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. . . ." As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation.

424 U.S. at 817 (internal citations omitted). As the full passage reflects, the Supreme Court had differentiated between cases involving (1) concurrent federal-state litigation and (2) concurrent federal litigation. *Id.*

8

The *Rice* court observed this distinction, stating that "a necessary premise of *Colorado River* abstention is the pendency of 'parallel state and federal proceedings.'" *Rice*, 605 F.3d at 476 (citation omitted).

Unlike the Eighth Circuit and each other circuit court to address the issue, the district court treated the *Colorado River* test as controlling in cases involving concurrent federal litigation. In doing so, the district court applied the wrong test, treating *Colorado River* as controlling when it wasn't. This error dictates reversal.

### C. We provide guidance for the district court if it again considers abstention.

Although we conclude that the district court erred by applying the wrong test, we recognize that we have not yet established a comprehensive test governing abstention when both cases are in federal court. *See Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) ("'As between federal district courts . . . no precise rule has evolved.'" (quoting *Colo. River*, 424 U.S. at 817)). We therefore supply guidance for the district court if it revisits the possibility of abstention.

When two federal suits are pending, the district court cannot resort to a "rigid mechanical solution." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). As a starting point, courts should apply the first-to-file rule. *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982). Under this rule, courts consider three factors:

9

"(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). But these factors are not exhaustive, and other equitable factors may bear on the inquiry. *See id.* (listing inequitable conduct, bad faith, anticipatory suits, and forum shopping as equitable considerations).

### 1.    The First-to-File Rule

Our circuit has adopted the first-to-file rule as a baseline. *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982). Some early cases in our circuit described this rule as a strict one. *See, e.g.*, *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972) (holding that once a federal district court obtains jurisdiction, "that right cannot be arrested or taken away by proceedings in another federal district court"). More recently, we stated that the first-to-file rule is a "general rule" and that the first court to acquire jurisdiction may not be ideally suited to decide the merits. *Hospah Coal Co.*, 673 F.2d at 1163–64; *see also Buzas Baseball, Inc. v. Bd. of Regents of the Univ. Sys. of Ga.*, 1999 WL 682883, at *2 (10th Cir. 1999) (unpublished) (noting that the first-to-file rule "permits," but does not require, a federal district court to abstain from exercising its jurisdiction in deference to a first-filed case in a different federal district court). We therefore consider not only the

10

chronology of events but also the similarities in the parties, issues, and claims.

### a.  The Chronology of Events

To determine chronology, we have recognized that "the first court in which jurisdiction attaches has priority to consider the case" and jurisdiction "relates back to the filing of the complaint." *Hospah Coal Co.*, 673 F.2d at 1163 (citation omitted).[3] As a result, determining the chronology of events typically requires only a comparison of the two filing dates.[4]

---

[3]  The Youngevity parties observe that the Wakaya parties had not served process before the start of the California case. Appellees' Resp. Br. at 36. This observation is irrelevant because the operative filing date is when the complaint was filed. *Hospah Coal Co.*, 673 F.2d at 1163; *see* p. 14, below (citing Fed. R. Civ. P. 3).

[4]  The sequence of filings bears on both the first-to-file rule and the *Colorado River* test. But as the Youngevity parties acknowledge, the two tests vary in the weight placed on which complaint was filed first. When both cases are pending in federal courts, the first-filed case often obtains priority. *Smart v. Sunshine Potato Flakes*, 307 F.3d 684, 687 (8th Cir. 2002). But when one of the cases is in state court, the sequence of filing dates is less likely "to be determinative because of the federal court's 'virtually unflagging obligation' to exercise its jurisdiction." *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976)).

The Youngevity parties implicitly recognized this difference, urging the California court to dismiss the Wakaya parties' counterclaims based on the first-to-file rule (rather than the *Colorado River* test). Even now the Youngevity parties assert that if the dismissal is overturned, the Wakaya parties' claims in Utah should take priority over their counterclaims in the California case. Appellees' Resp. Br. at 36 n.10.

But what if one of the complaints was filed initially in state court? Here, for example, the Utah complaint had been filed in Utah state court before the Youngevity parties sued in California federal court. The Youngevity parties eventually removed the Utah action to federal district court. But by then, the California complaint had already been filed. *See* note 2, above. In applying the first-to-file rule, do we consider the date that the Utah complaint had been filed in state court or the date that the Utah case was removed to federal court?[5] The district court focused on the date that the case had been removed. But many district courts in our circuit[6] and elsewhere[7] have focused on the date that the case was filed in

---

[5] The Youngevity parties argue that the first-to-file rule does not apply because the Wakaya parties had filed the Utah case only six days before the California case was filed. Appellees' Resp. Br. at 35–36. We disagree: The first-to-file rule applies regardless of how many days separate the filings. But district courts can exercise discretion on a case-by-case basis when weighing the impact of which case was filed first.

[6] *E.g.*, *Norrid v. D.A.R.P., Inc.*, No. 17–401, 2018 WL 2977384, at *2 (E.D. Okla. June 13, 2018) ("When a state action is removed to federal court, for first-to-file purposes, the state court filing date is the date used." (citation omitted)); *MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*, No. 05–115, 2006 WL 581018, at *3 (D. Utah Mar. 7, 2006) (same); *United States v. Kinder Morgan CO2 Co., L.P.*, No. 04–716, 2005 WL 3157998, at *2 (D. Colo. Nov. 21, 2005) ("[T]he first case filed . . . is measured from the state court filing date, not the date of removal.").

[7] *E.g.*, *Motiv Power Sys., Inc. v. Livernois Vehicle Dev., LLC*, No. 13–4811, 2014 WL 94370, at *2 (N.D. Cal. Jan. 9, 2014) ("[T]he date of removal is immaterial to the first-to-file analysis."); *Innovation Ventures, L.L.C. v. Custom Nutrition Labs., L.L.C.*, 534 F. Supp. 2d 754, 756 (E.D. Mich. 2008) ("[T]he date the removed action was filed in state court is the controlling date to determine which of two actions has priority. The date of

state court rather than the removal date. We agree that courts should focus on the date that the complaint was filed in state court. To do otherwise would reward gamesmanship. *See Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (applying the first-to-file rule to avoid gamesmanship).

The power of removal rests solely with the defendants. *See* 28 U.S.C. § 1446(b)(1). So focusing on the removal date would allow defendants to manipulate the first-to-file rule by suing in another forum before removing the first case. This sort of manipulation would allow defendants, not plaintiffs, to select the forum for the plaintiff's claim. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (recognizing that "the plaintiff's choice of forum should rarely be disturbed").

removal is immaterial."); *Feinstein v. Brown*, 304 F. Supp. 2d 279, 283 (D. R.I. 2004) (concluding that the plaintiffs' case had been filed first based on the date that the petition had been filed in state court prior to removal); *First Health Grp. Corp. v. Motel 6 Operating L.P.*, No. 00–524, 2000 WL 984160, at *2 (N.D. Ill. July 17, 2000) ("Motel 6's suit, when removed to federal court, must be treated as though it started in federal court as of the date it was filed in state court."); *Affinity Memory & Micro, Inc. v. K & Q Enter., Inc.*, 20 F. Supp. 2d 948, 954 n.10 (E.D. Va. 1998) ("When a state action is removed to federal court, for first-to-file purposes, the state court filing date is the date used."); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 n.1 (S.D.N.Y. 1994) ("Where a state action is subsequently removed to federal court, for the purposes of the First-to-File Rule, 'the state court filing date is the relevant benchmark.'" (citation omitted)); *Igloo Prods. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990) ("The question is whether in applying the first-filed rule, the Court should look to the date on which the Oregon state court suit was filed or the date on which it was removed to federal court. The Court considers the date of filing in state court to be the relevant benchmark.").

The Youngevity parties point out that the court in *Hospah Coal* described the operative date as the date in which "jurisdiction attaches." *Hospah Coal*, 673 F.2d at 1163. Out of context, this description could arguably be interpreted as a reference to the removal date. But in context, the *Hospah Coal* court was not referring to the removal date: The court used the phrase "jurisdiction attaches" when discussing cases initially filed in federal court, where the filing dates also constituted the dates that jurisdiction attached. *Id*. at 1161, 1163; *see* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). In this context, the court held that we should compare concurrent cases based on the date that the complaint was filed: We have no reason to jettison that approach when considering cases removed from state court. *See Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010) ("'After the removal of an action from state court . . . the case will proceed as if it originally had been brought in the federal court.'" (quoting 14C Wright et al., *Federal Practice and Procedure* § 3738 at 692–98 (4th ed. 2009)).[8] We

---

[8]     The Ninth Circuit Court of Appeals has also recognized priority under the first-to-file rule for "the court which first acquired jurisdiction." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). But district courts in the Ninth Circuit have recognized that this priority refers to the filing of the complaint in state court rather than the removal. *E.g.*, *SVF Weston Lakeside, LLC v. Certain Underwriters at Lloyds of London*, No. 16–7676, 2017 WL 6949285, at *1 n.1 (C.D. Cal. Feb. 9, 2017) (stating that "for the purposes of this first-to-file analysis," the pertinent date is when the plaintiff had filed the complaint in state court rather than the removal date); *Diversified Metal Prod., Inc. v. Odom*

14

therefore focus on the date that the complaint had been filed in state court rather than the removal date.

### b. The Similarity of the Parties and the Issues or Claims

We also consider whether the two cases bear substantial overlap in (1) the parties and (2) the issues or claims. *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790–91 (6th Cir. 2016).[9] We place less weight on similarity when considering abstention in concurrent federal cases than when one of the cases is in state court; when two federal cases

---

*Indus., Inc.*, No. 12–00162, 2012 WL 2872772, at *3 (D. Idaho July 12, 2012) ("At least for the purposes of the first-to-file rule, . . . the filing date assumed by a removed case is the date the action was filed in state court."); *Allstate Prop. & Cas. Ins. Co. v. Mercury Plastics*, No. 13–1763, 2014 WL 2197749, at *2 (D. Nev. May 27, 2014) (holding that the pertinent date, for purposes of the first-to-file rule, is the filing date in state court rather than the removal date); *Fakespace Labbs, Inc. v. Robinson*, No. 99–5258, 2000 WL 1721061, at *2 (N.D. Cal. Nov. 6, 2000) ("When one of the federal cases has been removed from state court, courts look to the date on which it was filed in state court [for purposes of the first-to-file rule]."). The Ninth Circuit Court of Appeals took a similar approach in an unpublished opinion, applying the first-to-file rule based on the filing date in state court because "[w]hen an action is commenced in state court and removed to federal court, the action remains the same." *Hartford Acc. & Indem. Co. v. Margolis*, 1992 WL 43484, at *1 (9th Cir. 1992) (unpublished).

[9]     The district court described some of the differences between the parties and issues when discussing the Utah and California cases. But the court did not discuss the significance of these differences. If the possibility of abstention is revisited, the district court should consider the significance of the differences between the two federal cases. *See Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994) ("[T]he court must make its findings about the parallel nature of the . . . proceedings and the balance of the factors on the record." (emphasis removed)).

15

are involved, we do not risk depriving a litigant of a federal forum. *Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, 868 F.3d 661, 664 (8th Cir. 2017).

## 2. Equitable Considerations

After determining the sequence and similarities in the cases, "court[s] must also determine whether any equitable considerations . . . merit not applying the first-to-file rule in a particular case." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016).

We have previously recognized some of these considerations.[10] For example, we've noted that the first-to-file rule may be disregarded "to prevent a misuse of litigation in the nature of vexatious and oppressive foreign suits." *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972). And we've said that courts need not defer to the first-filed case when doing so would reward forum shopping. *See Span-Eng Assocs. v. Weidner*, 771 F.2d 464, 470 (10th Cir. 1985) (noting that a district court may "take into account circumvention of the rules of procedure or court rulings" in determining whether to enjoin a party from pursuing one of two concurrent federal cases). These factors are not exhaustive. For example, the equitable factors bearing on state-federal concurrent litigation may also

---

[10]   The Wakaya parties argue that the district court erred by considering only the four equitable factors discussed in *Colorado River* and failing to consider other factors recognized in *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994). Appellants' Opening Br. at 14. We need not address this argument.

16

apply so long as courts observe that state-federal concurrent litigation triggers a different test. *See* pp. 4–9, above.

### D. The Wakaya parties did not forfeit their challenge to the district court's reliance on the *Colorado River* test.

In the alternative, the Youngevity parties argue that the Wakaya parties forfeited their challenge to the district court's reliance on the *Colorado River* test. We disagree: The district court raised the abstention issue *sua sponte*, so the Wakaya parties had no opportunity to address this issue in the Utah case.[11] We therefore conclude that the Wakaya parties did not forfeit this challenge.

---

[11]     The Youngevity parties also contended in oral argument that the Wakaya parties had waived reliance on the first-to-file rule by (1) failing to seek dismissal of the California litigation and (2) actively litigating in California for two years. We disagree.

For the sake of argument, we can assume that the first-to-file rule could be waived through intentional relinquishment of a known right or manipulation of the judicial process. *Cf. In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1205 (10th Cir. 2016) (discussing waiver of a right to arbitration). Here, though, the Wakaya parties did neither. When the Wakaya parties filed a counterclaim in the California case, they had already waited over a year for the Utah court to rule on the motion to dismiss. At that point, the Wakaya parties could have declined to file a counterclaim in California. But that tactic risked losing an opportunity to assert the claims anywhere if the Utah court were to eventually order dismissal. To avoid this risk, the Wakaya parties protected themselves by filing a counterclaim in California while waiting for the Utah court to rule. This protective course did not constitute an intentional relinquishment of a known right or manipulation of the judicial process.

17

## II. The district court erred by ruling that an arbitrator should decide whether Wakaya's claims were arbitrable.

The district court ruled that arbitrability should be decided by an arbitrator. Wakaya challenges this ruling, arguing that the arbitrability of its claims should be decided by a court rather than an arbitrator. On this issue, we engage in de novo review. *See Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

The district court recognized that Wakaya was not a party to the arbitration agreement, adding that Wakaya's claims were "likely arbitrable" because they were intertwined with claims asserted by some of the parties to the arbitration agreement. Appellants' App'x, vol. II, at 394. Ultimately, however, the court declined to decide whether Wakaya was subject to the arbitration agreement, leaving this question to the arbitrator to decide.

If the district court declines to abstain after our remand, the court would need to decide the arbitrability of Wakaya's claims.[12] The Supreme Court has repeatedly held that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs.,*

---

[12] The Youngevity parties argue that Wakaya's claims have already been litigated in California, mooting the arbitration issue. Appellees' Resp. Br. at 42–43. But the Youngevity parties are currently appealing the California court's ruling on arbitrability. Appellees' Resp. Br. at 18. Given the pendency of this appeal, the issue of arbitrability is not moot.

*Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The parties might "provide otherwise" by entering into an arbitration agreement. *Id.*

But Wakaya did not sign the arbitration agreement. As a result, the arbitrability of Wakaya's claims must be decided by a court rather than an arbitrator. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (stating that if the parties did not agree to submit the arbitrability question itself to arbitration, the court should decide this question).

\* \* \*

If the district court again considers whether Wakaya's claims are arbitrable,[13] the court should decide this issue rather than refer it to the arbitrator.

### The Youngevity Parties' Pending Motions

The Youngevity parties have moved for judicial notice and sanctions. We grant the motion for judicial notice and deny the motion for sanctions.

Sanctions are impermissible here because (1) the appeal is not frivolous and (2) the Wakaya parties did not act in bad faith. By the time that the Wakaya parties filed their opening brief, they faced two conflicting judicial conclusions:

---

[13] If the district court again decides to abstain from exercising jurisdiction of the Utah action, the court would not need to reach the arbitration issue. Deciding arbitrability in this situation could create a conflict with prior rulings in the California case (that are now pending on appeal).

19

- dicta in the District of Utah that Wakaya's claims are likely arbitrable and

- a ruling in the Southern District of California that the Youngevity parties had waived arbitration on Wakaya's claims for a declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, conversion, and tortious interference with existing relations.

Absent an appeal of the Utah ruling, Wakaya faced conflicting decisions.

And the Wakaya parties explain that they

- asserted counterclaims in the California case only because the Utah case had stalled and

- planned to seek dismissal of the California case if the motion to dismiss in Utah were eventually denied.

*See* note 11, above. This strategy was reasonable because the Wakaya parties could otherwise have lost the right to sue in either forum. We therefore deny the Youngevity parties' motion for sanctions.

## Disposition

We reverse and remand for further proceedings. We also grant the Youngevity parties' motion for judicial notice and deny the motion for sanctions.