*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0288P (6th Cir.)
File Name: 04a0288p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

J EFF L YNCH,

*Plaintiff,*

M IKE P OWERS,

*Plaintiff-Appellee/
Cross-Appellant,*

Nos. 03-3269/3279

*v.*

S IMON L. L EIS, J R., Sheriff of
Hamilton County, Ohio, and
L OUIS F. S TRIGARI, Public
Defender of Hamilton
County, Ohio,

*Defendants-Appellants/
Cross-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 00-00274—Susan J. Dlott, District Judge.

Argued: August 11, 2004

Decided and Filed: August 31, 2004

Before: SILER, MOORE, and COLE, Circuit Judges.

## COUNSEL

**ARGUED:** Philip L. Zorn, Jr., HAMILTON COUNTY
PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellant.
Stephen R. Felson, Cincinnati, Ohio, for Appellees.
**ON BRIEF:** Philip L. Zorn, Jr., Christian J. Schaefer,
HAMILTON COUNTY PROSECUTOR'S OFFICE,
Cincinnati, Ohio, for Appellant. Stephen R. Felson, Robert
B. Newman, Cincinnati, Ohio, Lisa T. Meeks, NEWMAN &
MEEKS, Cincinnati, Ohio, for Appellees.

## OPINION

KAREN NELSON MOORE, Circuit Judge. Defendants-Appellants-Cross-Appellees Simon L. Leis, Jr., Sheriff of Hamilton County, Ohio, and Louis F. Strigari, Public Defender of Hamilton County, Ohio, (collectively, "Hamilton County") appeal from the district court's grant of attorney fees to Plaintiff-Appellee-Cross-Appellant Mike Powers ("Powers") in this 42 U.S.C. § 1983 suit challenging the Hamilton County Justice Center's ("HCJC") policy of allowing prisoners to make only collect telephone calls, which in combination with the Hamilton County Public Defender's policy of refusing collect calls operated to deny pretrial detainees at the HCJC their Sixth Amendment right to counsel. Hamilton County argues that Powers lacked standing to bring the underlying action, that Powers could not maintain this suit without exhausting his state remedies under the Prison Litigation Reform Act ("PLRA"), that Powers is not a "prevailing party" under 42 U.S.C. § 1988, that Powers is only entitled to attorney fees as mandated by the PLRA, and that the district court abused its discretion in awarding attorney fees in the amount that it did. Powers argues in his cross-appeal that the district court erred in not awarding fees

for the full amount of time spent on preparing the petition for attorney fees, and in determining the reasonable hourly rate of one of his counsel. Because we determine that Powers never had standing to bring this action, we **REVERSE** the decision of the district court.

## I. BACKGROUND

The underlying facts of the case are not in dispute, and the merits of Powers's suit is not at issue in this appeal. At the time that the lawsuit commenced, pretrial detainees at the HCJC who did not make bond were placed, following arraignment, in a permanent housing unit where they were only allowed to make collect calls. The Public Defender's Office of Hamilton County, routinely assigned to indigent detainees charged with a misdemeanor, refused to accept collect calls on its main line, while its staff attorneys, who had discretion to accept collect calls on their direct lines, accepted only a tiny fraction of incoming collect calls (6 of 322 between October of 1999 and September of 2000). The district court determined that this violated the Sixth Amendment rights of pretrial detainees.

What is hotly contested is whether the district court properly exercised jurisdiction over this case. This action was initiated on April 7, 2000, with Jeff Lynch as the initial plaintiff. The first complaint sought "actual and punitive damages," as noted in its introduction, and prayed that the district court "[d]eclare that Defendants' telephone policies violate the Constitution," as well award damages, fees, and costs. Joint Appendix ("J.A.") at 12, 17. Powers was initially added to the suit on May 25, 2000, in the Second Amended Complaint. That complaint sought "nominal damages and equitable relief." J.A. at 19. Powers had been arrested on January 19, 2000 for operating a motor vehicle without a license and improper display of a license plate. He failed to appear and was eventually arrested, on April 4, 2000. After failing to make bail, he was confined at the HCJC for twenty days, when he was affected by the phone policies; after his

release on his own recognizance on April 24, 2000, he continued to have trouble resolving his case and a capias—a writ directing his arrest—was issued on June 21, 2000. That capias was recalled on July 23, 2000, and Powers's case was resolved on July 24, 2000, with a nolo contendere plea.

Lynch and Powers moved for a preliminary injunction on November 1, 2000, and to certify a class on February 2, 2001. On February 8, they moved to consolidate their pending motion for a preliminary injunction with a motion for a permanent injunction. On March 16, 2001, a joint stipulation of facts was filed by the parties, including the stipulation that the capias had been issued on June 21, 2000, and Hamilton County filed a motion to dismiss for lack of subject matter jurisdiction. On January 22, 2002 the Third Amended Complaint was filed by Lynch and Powers, containing for the first time an allegation of the issuance of the capias, and on January 25, 2002, the district court ruled on Hamilton County's motion to dismiss, which was filed in response to the Second Amended Complaint. Hamilton County had moved to dismiss alleging the plaintiffs lacked standing and had failed to exhaust their administrative remedies under the PLRA. In response, the plaintiffs had argued with respect to Powers's standing that he was free on his own recognizance on the date of the filing of the Second Amended Complaint—when he was added to the litigation—and "thus in imminent danger of being reincarcerated if he failed to perform as required." J.A. at 112 (Mem. in Opp. to County Defs. Mot. To Dismiss). They also noted, "That danger was drastically multiplied by the issuance of a *capias* on June 21, 2000," J.A. at 112, and obliquely implied the capias was still outstanding: "even if Mr. Powers' claim *becomes moot* by the disposition of his proceedings . . ." J.A. at 113 (emphasis added). Of course, at the time that this Memorandum was filed, his case had been resolved.

The district court dismissed Lynch from the suit on January 25, 2002, for lack of standing, but denied Hamilton County's motion to dismiss Powers from the suit, on the

ground that the capias had been outstanding against Powers since June 21, 2000, thereby creating a substantial threat of injury sufficient to confer standing. This factual conclusion was incorrect; while the parties had stipulated to the issuance of the capias, they had not stipulated to its continued existence—but neither had they stipulated to its withdrawal. On January 30, 2002, the defendants filed their answer to the Third Amended Complaint, admitting that a capias was issued on June 21, 2000. On February 19, 2002, the district court granted the plaintiffs' motion for a permanent injunction. The district court's opinion again contained the erroneous statement that the capias was "currently outstanding." *Lynch v. Leis*, No. C-1-00-274, slip op. at 6 (S.D. Ohio. Feb. 19, 2002), J.A. at 139.

On February 20, 2002, the defendants filed a motion under Federal Rules of Civil Procedure 52(b), 59(a), and 60(b) to vacate the district court's January 25 and February 19, 2002 orders, based on the results of an investigation into Powers's court case, revealing that the capias was withdrawn. They apologized for the failure to bring the information to the district court's attention in a timely manner. After further papers from both sides, the district court denied Hamilton County's motion to vacate on May 8, 2002. The district court reasoned that under Rules 59 and 60(b), the only evidence that could be admitted on motion was that not discoverable through due diligence, and that court records were certainly discoverable through due diligence. The district court rejected the defendants' reliance on the usual rule that subject matter jurisdiction can be raised any time, reasoning that the defendants had "stipulated facts giving rise to jurisdiction." J.A. at 233. The district court also rejected what it characterized as Hamilton County's oblique argument that the case was moot due to voluntary compliance; they had in fact made the slightly more nuanced, though rather more flawed, argument that their voluntary compliance deprived Powers of *initial* standing.

At that point, the defendants appealed to this court from the district court's decisions of January 25, 2002 (motion to dismiss), February 19, 2002 (entry of permanent injunction), and May 8, 2002 (denial of motion to vacate). While the appeal was pending, the parties continued to litigate the issue of attorney fees. On June 4, 2002, Powers moved to dismiss the appeal as moot under prior case law, because Hamilton County was complying with the injunction rather than seeking a stay, and arguing that there was no exception to the rule that voluntary compliance moots an appeal for challenges to the district court's subject matter jurisdiction, as the appeals court had no jurisdiction in the first instance. A panel of this court granted Powers's motion to dismiss the appeal as moot. *Lynch v. Leis*, No. 02-3610 (6th Cir. Aug. 13, 2002) (order granting motion to dismiss), J.A. at 461-62. On August 26, 2002, the defendants moved again in the district court to dismiss the case and Powers's request for attorney fees due to lack of jurisdiction. On January 24, 2003, the district court denied that motion and granted Powers's motion for attorney fees, awarding $71,782.50 in fees and $2,201.08 in costs, based on a lodestar of $57,426 and a multiplier of 1.25. In doing so, the district court incorporated its previous rulings on standing, the PLRA, and mootness, and threatened the defendants with sanctions for repeatedly arguing the points. It is from that ruling that all parties appeal.

## II. ANALYSIS

### A. Standard of Review

The issue of standing is reviewed de novo. *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 523 (6th Cir. 2001).

### B. Standing

As a preliminary matter, Powers asserts that this appeal, to the extent it raises issues on the merits declared moot in Hamilton County's previous appeal, is moot, both as a matter

of law of the case and because Hamilton County has complied fully with the lower court's injunction. This argument is unavailing, and can be dealt with briefly. The first appeal was dismissed as moot because no live case or controversy existed; no further dispute existed between the parties because Hamilton County had voluntarily complied with the injunction.[1] This appeal concerns the propriety of the fee award, which presents a live case or controversy between the parties: a monetary judgment against the defendants below indubitably presents a live appeal. If Powers is not a proper prevailing party, the fee award was in error. If Powers never had standing to bring the case,[2] he is not a proper prevailing

---

[1] This holding may very well have been precipitous, as "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 174 (2000). Nonetheless, in another example of the confusion surrounding basic federal courts issues in this case, Hamilton County had "concede[d] that they are now in full compliance with the injunction and that the alleged wrongful conduct cannot reasonably be expected to recur," thus voluntarily mooting their own appeal. *Lynch v. Leis*, No. 02-3610, 1 (6th Cir. Aug. 13, 2002) (order granting motion to dismiss), J.A. at 461.

[2] We note briefly that Powers had asserted below a claim for nominal damages, which is normally sufficient to establish standing, defeat mootness, and grant prevailing party status for the purpose of attorney fees under 42 U.S.C. § 1988. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) ("[E]ven an award of nominal damages suffices under [the prevailing party] test."); *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("[T]he deprivation of such [absolute] rights [is] actionable for nominal damages"); *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1268 (10th Cir. 2004) ("The Sixth and Ninth Circuits, like ours, squarely hold that a claim for nominal damages is sufficient to render a case justiciable.") (McConnell, J., concurring); *Murray v. Bd. of Trs.*, 659 F.2d 77, 79 (6th Cir. 1981) (district court erred in dismissing entire complaint as moot, rather than simply dismissing claim for injunctive relief, where plaintiff sought nominal damages and fees). However, at oral argument, counsel for Powers indicated that the claim for nominal damages was no longer live, as the district court had issued its final decision on the merits without awarding damages, a decision

---

party. That the previous appeal was moot because the judgment below—the injunction—no longer presented a matter of dispute between the parties is totally irrelevant to the question of whether the judgment below on this appeal—the fee award—presents such a dispute. Powers also requests sanctions against Hamilton County for bringing a frivolous appeal; that request fails, as explained below.

Hamilton County asserts in this appeal—as it did in the previous appeal and before the district court numerous times—that Powers never had standing to seek injunctive relief, as there was not a "threat of injury . . . both real and immediate, not conjectural or hypothetical." *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). The county complains that the district court incorrectly inferred that the capias was outstanding from June 21, 2000 forward, and relied upon that incorrect inference in holding that Powers had standing to bring the action. In response, Powers asserts first that the district court's rationale for refusing Hamilton County's attempt to introduce new evidence which it could have discovered earlier through due diligence[3] was correct; then that Hamilton County had stipulated to facts which created standing, *see Eng'g Contractors Ass'n of S. Fla. Inc. v. Metro. Dade County*, 122 F.3d 895, 905 (11th Cir. 1997); and finally that at the time of the filing of the Third Amended Complaint, "the stipulated fact was that an outstanding capias existed for Plaintiff Powers." Appellee's/Cross-Appellant's Br. at 20.

Standing "is to be determined as of the time the complaint is filed." *Cleveland Branch, NAACP*, 263 F.3d at 524. The

---

which went unappealed by Powers. Therefore, because Powers lacked standing on the one claim on which he prevailed, the fee award cannot stand.

[3] In fact, Hamilton County's court records are available to the public online at http://www.courtclerk.org.

parties dispute whether the operative complaint is the first complaint, initiating the action, the Second Amended Complaint, adding Powers, or the Third Amended Complaint, the final complaint filed. This confusion seems to be generated by *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991), which in the course of conferring standing to seek injunctive relief on warrantless arrestees who at the time their complaint was filed were suffering constitutional injury, referred to the final complaint filed in the case, the second amended complaint, as "the operative pleading." *Id.* at 48. A careful reading of *County of Riverside* demonstrates that the second amended complaint was important not because it was the operative pleading, but because it was that complaint which named "three additional plaintiffs" who were "still in custody" at the time the complaint was filed, and who were the plaintiffs found to have standing by the Court. *Id.* at 49, 51; *see also Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 929 (6th Cir. 2002) (describing focus of *County of Riverside* Court on "second amended complaint *making the claim in question*" (emphasis added)). Therefore, the operative complaint is the one adding Powers to the action, and the operative date is May 25, 2000, rendering the capias entirely irrelevant to the question of standing.[4]

Instead, Powers's standing to seek injunctive relief must rise or fall on his status on May 25, 2000, at which point he was out on bond, with two separate cases proceeding against him. *See State v. Powers*, No. C/00/TRD/5236/ A, B (Hamilton County Municipal Traffic Division May 6, 2000) (docket sheet), http://www.courtclerk.org/aps/ttl/lns/smcpb026.asp?C/00/T

---

[4]The operative complaint here could not be the first complaint consonant with *County of Riverside*, and it could not be the Third Amended Complaint consonant with the general rule that while "a plaintiff may correct the complaint to show that jurisdiction does in fact exist . . ., [federal jurisdiction] may not be created by amendment." JAMES WM. MOORE, 3 MOORE'S FEDERAL PRACTICE § 15.14[3], at 15-34 (3d ed. 2000).

RD/5236; *State v. Powers*, No. 00/TRD/23718, A, B (Hamilton County Municipal Traffic Division January 19, 2000) (docket sheet), http://www.courtclerk.org/aps/ttl/lns/smcpb026.asp?/00/TRD/23718.[5] In at least one of those cases, No. C/00/TRD/5236/A, B ("No. 5236"), that relied upon below, his case hadn't moved forward beyond his release from custody. The question then becomes whether the mere pendency of proceedings against Powers could create a sufficient risk that he would again be subject to the deprivation of his Sixth Amendment right by being placed in detention at the HCJC to confer standing upon Powers to seek injunctive relief to prevent that deprivation. In *Lyons*, the Supreme Court explained that "a real and immediate" threat did not exist to confer standing where such a threat was attenuated by both the unlikeliness that Lyons would have another encounter with the police and the unlikelihood that the police would employ a chokehold during that encounter. 461 U.S. at 101-09. In the instant case, while there was certainty that if placed in detention again Powers would have been subject to the unconstitutional policy, there was no certainty that he would have been placed in detention again. "[F]or purposes of assessing the likelihood that state authorities will reinflict a given injury, [the Supreme Court] generally ha[s] been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." *Honig v. Doe*, 484 U.S. 305, 320 (1988); *see also Lyons*, 461 U.S. at 101-09; *Grendell v. Ohio Supreme Ct.*, 252 F.3d 828, 833 (6th Cir. 2001) (likelihood that plaintiff would again bring a lawsuit so frivolous as to place him at risk of sanctions too remote to support standing). Powers would have had to fail to appear for a scheduled court date on his pending matters, violate the conditions of his pretrial release in some other

---

[5]As noted above, these court records are available online to members of the public; as they are court records, this court may take judicial notice of them. *See Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999).

way, or commit some other conduct leading to his arrest. This chance, based on Powers's likelihood of violating unchallenged laws,[6] is insufficient to confer Article III standing.

It is unfortunate that the confusion between the parties below over this most fundamental of jurisdictional issues has led to this outcome, where a prevailing party whose attorneys won an important victory for all pretrial detainees at the Hamilton County Justice Center is denied a fee award after a completed successful action, but "[u]nless the statute under which a party seeks attorney's fees contains an independent grant of jurisdiction, an appellate court must vacate an award of attorney's fees if the district court did not have subject matter jurisdiction over the litigation." *Greater Detroit Res. Recovery Auth. & Combustion Eng'g v. United States EPA*, 916 F.2d 317, 320 (6th Cir. 1990); *see also Friends of the Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 886-887 (8th Cir. 1995). The award of attorney fees and costs to Powers is therefore **REVERSED**.

---

[6] Powers does not argue that the substantive law forbidding his conduct (in this case, the Ohio vehicle code) is invalid, but instead that some consequence of his citation is unlawful. Where the law forbidding the illegal act is itself challenged, an allegation that the plaintiff wishes to engage in the unlawful activity is sometimes sufficient to confer standing to challenge the law. *See, e.g., Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983).