FILED
United States Court of Appeals
Tenth Circuit

May 10, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

SPRINT NEXTEL
CORPORATION,

      Plaintiff Counter Defendant-
Appellee,

v.

THE MIDDLE MAN, INC.,

      Defendant Counterclaimant-
Appellant,

and

BRIAN K. VASQUEZ,

      Defendant Counterclaimant.

No. 15-3108

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:12-CV-02159-JTM)**

---

Charles R. Price, Tandum Legal Group, LLC, Washington, D.C. (James J.
Kernell, Erickson, Kernell, Derusseau & Kleypas, LLC, Leawood,
Kansas, with him on the briefs), for Defendant Counterclaimant-
Appellant.

Dean A. Morande (Stacey K. Sutton and James B. Baldinger, with him on
the brief), Carlton Fields Jorden Burt, P.A., West Palm Beach, Florida,
for Plaintiff Counter Defendant-Appellee.

---

Before **TYMKOVICH**, Chief Judge, **LUCERO**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal grew out of a conflict between the business models of Sprint Nextel Corporation and The Middle Man, Inc. Sprint sells mobile telephones and service plans, intending for the purchasers to use the telephones on the Sprint network (rather than resell them). Middle Man buys mobile telephones, including Sprint's, and tries to resell them at a profit. The two business models collided, and Sprint brought the present action for breach of contract.[1] Middle Man counterclaimed, seeking a declaration that its business model does not violate the contract that accompanies the purchase of Sprint telephones. On each set of claims, Sprint and Middle Man filed dispositive motions.[2]

_____

[1] In district court, Sprint also brought claims of unfair competition, tortious interference with business relationships and prospective advantage, civil conspiracy, unjust enrichment, conspiracy to induce breach of contract, common-law fraud, fraudulent misrepresentation, trafficking in computer passwords, unauthorized access of protected computer systems, unauthorized access with intent to defraud, trademark infringement, false advertising, and contributory trademark infringement. But these claims are not involved in this appeal.

[2] Although Middle Man's owner, Mr. Brian Vazquez, was a party to both Sprint's claim and Middle Man's counterclaim, Mr. Vazquez is not a party to this appeal.

2

Both sets of claims and dispositive motions involved interpretation of the contract. Sprint argued that the contract prohibited Middle Man from reselling Sprint's telephones regardless of whether they were active on the Sprint network. Middle Man argued that the contract unambiguously allowed resale of Sprint telephones if they were not active on the Sprint network. In the alternative, Middle Man asserted that the contract (1) was ambiguous regarding the right to resell Sprint telephones and (2) should be construed against Sprint as the drafting party.

In deciding these motions, the district court held as a matter of law that the contract unambiguously prohibited Middle Man from selling new mobile telephones purchased from Sprint regardless of whether they were active on Sprint's network. In light of this holding, the district court (1) granted judgment on the pleadings to Sprint on Middle Man's counterclaim for a declaratory judgment and (2) granted summary judgment to Sprint on its breach of contract claim, awarding Sprint nominal damages of $1.

Middle Man appeals, contending that the entry of judgment on Sprint's claim and Middle Man's counterclaim was erroneous and that the district court should have awarded judgment to Middle Man on both claims. In the alternative, Middle Man contends that we should vacate the

3

district court's ruling that the contract unambiguously prohibits Middle Man from reselling Sprint telephones. We reverse the entry of judgment but reject Middle Man's request for us to order judgment in its favor.

**1.  This appeal turns on issues involving justiciability, contractual interpretation, and civil procedure.**

The appeal presents three sets of issues.

The first set of issues involves justiciability. In its opening brief, Middle Man stated that this appeal involves principle rather than money. Seizing on this language, Sprint argues that

- Middle Man lacks appellate standing and

- the action is prudentially moot.

Notwithstanding Middle Man's rhetoric in its opening brief, the dispute is justiciable. Under our precedent, Sprint's award of nominal damages constitutes an injury in fact to Middle Man, and the doctrine of prudential mootness does not apply because Sprint obtained an award of damages rather than equitable relief.

The second set of issues involves the meaning of contractual language. The contract stated that Middle Man could not resell Sprint's "Services" and that "customer devices" were not for resale. Sprint argues that these clauses unambiguously prohibited Middle Man from reselling Sprint telephones; Middle Man argues that the clauses are ambiguous on

4

whether the telephones can be resold if not active on the Sprint network. We agree with Middle Man. The term "Services" does not necessarily cover telephones that are not active on the Sprint network, and the "customer devices are not for resale" clause may simply have referred to Sprint's intent.

The third set of issues relates to Middle Man's motion to alter or amend the judgment. On appeal, Middle Man argues that the contract could not restrict resale of Sprint telephones because that restriction would constitute an impermissible restraint on Middle Man's title to the telephones. In district court, Middle Man did not raise this argument until its motion to alter or amend the judgment. By then, the argument was too late. The district court rejected the argument on the ground that it should have been presented earlier. This ruling fell within the district court's discretion.

## 2. The appeal is justiciable.

The threshold issue is whether the appeal is justiciable, for Sprint argues that Middle Man lacks appellate standing and that the appeal is prudentially moot. We reject both arguments.

### A. Middle Man has appellate standing because it suffered an "injury in fact."

The U.S. Constitution provides that to appeal, one must have standing. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). Constitutional standing entails multiple elements, including an injury in fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[3] In addition, prudential limitations restrict standing even when an appellant satisfies the constitutional elements. *Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984). These limitations prevent parties from appealing "to enforce the rights of others." *RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1073 (10th Cir. 2009).

In Sprint's view, Middle Man has admitted the absence of an injury in fact to itself and boasted that victory in the appeal would serve only to benefit others. These arguments are based primarily on four statements in Middle Man's opening brief:

- "On its face, this appeal is almost purely academic."

- Middle Man purports to appear "on principle," "on behalf of many."

- "In the typical sense," Middle Man "has nothing to gain and nothing to lose" in the appeal.

- Middle Man's "goal is to save others from having to suffer."

---

[3]     The other constitutional elements are traceability and redressability. *S. Utah Wilderness All. v. Office of Surface Mining Reclamation & Enf't*, 620 F.3d 1227, 1233 (10th Cir. 2010).

Appellant's Opening Br. at 2, 23. These rhetorical flourishes do not strip Middle Man of standing.

Under Article III, Middle Man must show an injury in fact, consisting of a concrete, particularized invasion of a legally protected interest. *Tennille v. W. Union Co.*, 809 F.3d 555, 560 (10th Cir. 2015). Regardless of Middle Man's characterization of what is at stake, the district court's rulings created an injury in fact by subjecting Middle Man to nominal damages and rejecting Middle Man's counterclaim for a declaratory judgment.

First, Middle Man was ordered to pay nominal damages. This award of nominal damages creates an injury in fact. *See Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1257 (10th Cir. 2004) (holding that "a complaint for nominal damages could satisfy Article III's case or controversy requirements, when a functionally identical claim for declaratory relief will not").[4]

---

[4] Other circuits have also held that nominal damages are sufficient for an injury in fact. *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 803 (8th Cir. 2006) (stating that the plaintiff has standing because it "might be entitled to nominal damages"); *Lynch v. Leis*, 382 F.3d 642, 646 n.2 (6th Cir. 2004) ("[A] claim for nominal damages . . . is normally sufficient to establish standing . . . ."); *Yniguez v. Arizona*, 975 F.2d 646, 647 (9th Cir. 1992) (per curiam) ("A plaintiff's pursuit of nominal damages provides a sufficiently concrete interest in the outcome of the litigation to confer standing . . . .").

Because the nominal damages award was imposed on Middle Man rather than a third party, we also reject Sprint's prudential-standing argument. Middle Man is not appealing solely to protect the rights of others; having lost in district court, Middle Man bore the burden of paying the nominal damages award.

Second, the district court's ruling would interfere with Middle Man's alleged business model. In its counterclaim, Middle Man alleged that its business included the resale of Sprint mobile telephones. Appellant's App'x at 210. Because Sprint took the position that these resales constituted a contractual breach, Middle Man sought a declaratory judgment to provide "guidance as to how [its] business can and must operate going forward." *Id.* at 215. The district court entered judgment for Sprint on Middle Man's counterclaim for a declaratory judgment. The district court's ruling allegedly imperiled Middle Man's alleged business model by holding that the contract prohibited resale of Sprint telephones.

For both reasons, the district court's rulings created an injury in fact for purposes of appellate standing.

**B.    The appeal is not prudentially moot.**

Sprint argues not only that Middle Man lacks standing but also that this appeal is prudentially moot. This argument is invalid as a matter of

8

law. Ordinarily an action can become prudentially moot only when the claim involves prospective equitable or declaratory relief. *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1492 (10th Cir. 1993). By definition, an award of nominal damages involves a remedy that is "legal," not "equitable." *See Griffith v. Colo., Div. of Youth Servs.*, 17 F.3d 1323, 1327 (10th Cir. 1994) (stating that nominal damages are legal, not equitable). Thus, the doctrine of prudential mootness would ordinarily not apply.

A limited exception is sometimes recognized, rendering a damage award prudentially moot when it is uncollectible. 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.3 (3d ed. 2008). Sprint does not invoke this exception. As a result, we apply the general rule, declining to consider Sprint's claim as prudentially moot.

## 3. The contract is ambiguous.

Because this dispute is justiciable, we must address the merits. On the merits, the parties disagree over the meaning of two contractual provisions.

Under the first provision, Middle Man cannot "resell the services to another party." Appellant's App'x at 57-58. The contract defines the term "Services" to include "Devices on [Middle Man's] account with

9

[Sprint]." *Id.* In turn, the contract defines "Devices" to include a mobile telephone that Sprint provided or sold to the customer or that "is active on [Middle Man's] account with [Sprint]." *Id.*

The second contract provision states that "customer devices . . . are not for resale." *Id.* at 59.

Sprint argues that these terms unambiguously prohibit Middle Man from reselling Sprint telephones; Middle Man argues that the provisions are ambiguous because one can reasonably interpret the provisions to forbid resale only when the telephone is active on the Sprint network. We agree with Middle Man, concluding that the contract is ambiguous.

## A. Our review is de novo on each ruling.

On Middle Man's counterclaim, seeking a declaration that the contract permits the resale of non-active telephones purchased from Sprint, both parties filed motions for judgment on the pleadings. On Sprint's claim for breach of contract, Sprint filed a motion for summary judgment and Middle Man objected. The district court ultimately granted both of Sprint's motions and denied Middle Man's motion.

For all three of the rulings, our review is de novo, requiring us to apply the same standard that governed in district court. *See Automax Hyundai S., L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 803 (10th Cir. 2013) (motion for summary judgment); *Ramirez v. Dep't of Corr.*, 222

10

F.3d 1238, 1240 (10th Cir. 2000) (motion for judgment on the pleadings). Under the standard governing motions for judgment on the pleadings, we must credit the non-movant's factual allegations and construe them favorably to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). And in considering Sprint's motion for summary judgment, we must credit Middle Man's evidence and view all reasonable inferences favorably to Middle Man. *Bohn v. Park City Grp.*, 94 F.3d 1457, 1460 (10th Cir. 1996). In viewing the allegations and evidence in this manner, we may uphold the rulings for Sprint only if it established a right to judgment as a matter of law. *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (motion for judgment on the pleadings); *Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002) (motion for summary judgment).

Our resolution of both parties' motions turns on whether the contract is ambiguous. If not, Kansas law would have required the district court to interpret the contract as a matter of law.[5] *See Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 754 P.2d 803, 805-06 (Kan. 1988) ("The construction of a written instrument is a question of law, and the

---

[5] The contract states that it is governed by the laws of the state "encompassing the billing address of the Device." Appellant's App'x at 64. The parties agreed that Middle Man's billing address for its devices was in Kansas. *Id.* at 316, 354.

11

instrument may be construed and its legal effect determined by an appellate court."). But if the language is ambiguous, interpretation would be for the trier of fact, not the court. *See Royer v. W. Silo Co.*, 161 P. 654, 654 (Kan. 1916) (Syllabus by the Court) ("Where an ambiguous expression is used in a written contract, it is proper to show by evidence what the parties understood and intended by the expression, and to submit to the jury, with proper instructions, the interpretation of the expression as used in the contract."); *see also Waste Connections of Kan., Inc. v. Ritchie Corp.*, 298 P.3d 250, 265 (Kan. 2013) ("[I]f the language of a contract is ambiguous and the intent of the parties cannot be ascertained from undisputed extrinsic or parol evidence, summary declaratory judgment is inappropriate.").

**B.   We determine ambiguity based on the reasonableness of different interpretations.**

To determine whether the contract was ambiguous, we consider whether the wording is susceptible to different interpretations. *Thoroughbred Assocs., L.L.C. v. Kan. City Royalty Co.*, 308 P.3d 1238, 1247 (Kan. 2013). Though the district court determined that the contract was unambiguous, we review that determination de novo. *See Stewart v. Adolph Coors Co.*, 217 F.3d 1285, 1289 (10th Cir. 2000) ("We review de novo the question[] of contract ambiguity . . . .").

12

### C. Middle Man did not forfeit or waive its argument on ambiguity.

In district court, Middle Man argued primarily that the contract unambiguously allowed customers to resell Sprint telephones if they were not then active on the Sprint network. In a single sentence, Middle Man argued that even if the contract had not clearly permitted resale, the contract did not clearly support Sprint's interpretation, rendering the contract ambiguous. In this appeal, Middle Man again contends that the contract was ambiguous. According to Sprint, however, Middle Man failed to adequately develop this argument in district court. We disagree.

An appellant can fail to preserve an appeal point through either forfeiture or waiver. Forfeiture is failure to timely assert a right; waiver is the intentional relinquishment or abandonment of a known right. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011).

Middle Man did not intentionally relinquish an argument that the contract was ambiguous, for Middle Man specifically urged ambiguity as an alternative argument in district court. Appellant's App'x at 251. Thus, Middle Man did not waive its ambiguity argument.

Nor did Middle Man forfeit the argument. Middle Man argued at length that its interpretation was unambiguously supported by the contractual wording. When Sprint disagreed, Middle Man argued in the

13

alternative that if Sprint's interpretation were considered reasonable, the contract would be considered ambiguous. Middle Man presented its alternative argument in only one sentence, but little else needed to be said because Middle Man was relying on the same textual clues supporting its primary argument that the contract was unambiguous. As a result, Middle Man did not forfeit its alternative argument that the contract was ambiguous.[6]

### D.    The contract is ambiguous regarding Middle Man's right to resell inactive telephones purchased from Sprint.

The parties agree that the contract prohibits Middle Man from reselling mobile telephones that are active on the Sprint network. Sprint goes further, insisting that the prohibition applies regardless of whether the telephones are active on the Sprint network. According to Sprint, Middle Man cannot sell mobile telephones even when they are inactive. Middle Man disagrees, contending that the prohibition is limited to telephones active on Sprint's network.

The disagreement turns on two contract provisions. The first provision prohibits resale of "Devices" that are on Middle Man's account

---

[6]    Sprint points out that in opposing summary judgment, Middle Man did not challenge the district court's interpretation of the contract. Appellee's Resp. Br. at 21. But by the time Middle Man opposed summary judgment, the district court had already adopted Sprint's interpretation of the contract.

14

with Sprint. The second provision states that customer devices are not for resale. In our view, the two provisions could reasonably be interpreted to support both sides' interpretations.

### 1. The prohibition against reselling "Services" is ambiguous.

The contract prohibits customers from "resell[ing] the Services to another party." *Id.* at 58. The term "Services" is defined to include "Devices on your [Middle Man's] account with us [Sprint]." *Id.* at 57. The parties disagree over this definition. When a Sprint telephone is active on the Sprint network, both parties agree that the telephone constitutes a "Device on [Middle Man's] account with [Sprint]." As a result, Middle Man cannot resell that telephone. But what about a telephone that is not active on the Sprint network? Middle Man argues that such a telephone is not on anyone's Sprint account. Thus, in Middle Man's view, the contract does not prohibit resale of a telephone unless it is active on the Sprint network.

Sprint disagrees, arguing that resale is prohibited regardless of whether the telephone is active on Sprint's network. But if that is true, Middle Man rhetorically asks why Sprint included the phrase "on your account with us." Sprint's interpretation would give this phrase no meaning; resale is prohibited both when the telephone is "on [Middle

15

Man's] account" and not "on [Middle Man's] account." Sprint might just as well have written "Devices."

Middle Man argues that the phrase "on your account with us" must have some meaning. One way to infuse meaning into the phrase is to prohibit resale of telephones only when they are active on Sprint's network. But this reading is not obviously correct, either: the contract elsewhere mentions Devices "active on your account with us," suggesting that "Devices on your account with us" must include more than just active Devices. *See id.*

Both interpretations are reasonable. As Sprint argues, one can read the provisions to prohibit the resale of any devices purchased from Sprint. But that reading is subject to reasonable debate; it does not distinguish "Devices on your account with us" from "Devices." Just as plausibly, one can read the contract to prohibit the resale of Sprint telephones only if the telephone is active on Sprint's network. After all, the contract purports to prohibit the resale of Sprint's "Services," not Sprint's "Devices." The only telephones with service are those that are active on the Sprint network.

Sprint also contends that the term "Device" is defined so broadly that it must include at least some inactive telephones. Even if we credit this contention, however, it is legally immaterial. The contract prohibits

16

the resale of "Services," not of "Devices." In turn, the contract defines "Services" to include only those "Devices" that are "on your [Middle Man's] account with us [Sprint]." *Id.* at 58. Therefore, even if Sprint is correct that the broad term "Devices" includes inactive telephones, it does not follow that "Devices on your account with us" — the only "Devices" that qualify as "Services" under the contract — include inactive telephones.

Sprint points out that the term "Service" "also includes any other product or service . . . that references" the contract's general terms and conditions. *Id.* at 57. According to Sprint, this definition includes all telephones provided or sold by Sprint regardless of whether they are "active."

Though this interpretation is reasonable, other interpretations are also reasonable. For example, one might justifiably wonder whether an inactive telephone is a product or service that "references" the terms and conditions. And if it does, how? Sprint does not tell us.

Nonetheless, Sprint's interpretation is reasonable. The term "Devices on your account with us" must mean something, but what? A reader might justifiably infer that this phrase includes inactive telephones, but another reader might justifiably arrive at the opposite conclusion. Because both interpretations are plausible, we regard the

17

prohibition on resale as ambiguous with respect to whether it covers inactive telephones as well as telephones that have already been activated on the Sprint network.

**2.    The contract is also ambiguous in stating that customer devices are not for resale.**

Sprint also points to a separate provision, which states that "customer devices . . . are not for resale." *Id.* at 54. As Sprint points out, one reasonable interpretation is that a customer like Middle Man cannot resell any Sprint telephone regardless of whether it is active on the Sprint network. But this is not the only reasonable interpretation.

Middle Man reads the provision simply to reflect Sprint's intent, entailing regulatory consequences rather than creating a categorical prohibition on resale. For this interpretation, Middle Man points to the phrase "customer devices" and the passivity of the sentence. In the contract, "Devices" is a defined term, but "customer devices" isn't. As a result, one might reasonably infer that the two terms have different meanings. But if they are different, what is a "customer device"? Sprint does not tell us in the contract. *See Decker v. Marshall-DeKalb Elec. Coop.*, 659 So.2d 926, 930 (Ala. 1995) ("[I]t is the *absence of definitions*, under these circumstances, that provides the ambiguity that requires the factfinder to determine the true meaning of the contract.").

18

Sprint now suggests that "Devices" mean the same thing as "customer devices." But if that is true, why would Sprint add the word "customer" to qualify "devices" and use the lower-case for "devices" rather than the capitalized, defined term "Devices"?

And the clause is framed passively, stating that customer devices "are not for resale." Some regulations are triggered based on the volume of sales "for resale." *See, e.g.*, 29 C.F.R. § 779.411. Thus, Sprint may have intended the provision to avoid regulations governing sales intended for resale.

Or, the phrase may simply have reflected Sprint's intention for the buyer to keep the telephone. The wording "is not for ____" is commonly used to reflect intention. For example, a seller of board games might put on the package: "This game is not for children under 8 years of age." That wording does not typically constitute a contractual prohibition against a buyer allowing a 7-year-old child to play the game. Instead, most would read the statement as an expression of the seller's intent: the seller intends for the game to be played by individuals 8 and older. This reading is particularly intuitive here because the clause appears in a sentence discussing Sprint's intent.[7]

---

[7]     The clause reads, in full: "**Nature of our Service.** Our rate plans, customer devices, services and features are not for resale and are

Perhaps the provision reflected nothing more than Sprint's intent for customers to keep the telephones they bought. This is at least a reasonable interpretation of the contract.

**E.     Because the contract was ambiguous, Sprint was not entitled to judgment on the pleadings or summary judgment.**

Because both provisions are susceptible to different interpretations, we regard the contract as ambiguous.[8] Because of this ambiguity, the district court could not interpret the contract as a matter of law. Instead, interpretation was for the trier of fact. As a result, the district court should not have granted Sprint judgment on the pleadings or summary judgment. *See Waste Connections of Kan., Inc. v. Ritchie Corp.*, 298 P.3d 250, 265 (Kan. 2013) ("[I]f the language of a contract is ambiguous and the intent of the parties cannot be ascertained from undisputed extrinsic

---

intended for reasonable and non-continuous use by a person using a device on Sprint's networks." Appellant's App'x at 54.

[8]     The district court initially interpreted the contract to unambiguously favor Middle Man. The court subsequently granted Sprint's motion for reconsideration and adopted Sprint's interpretation. Middle Man argues that the district court's about-face serves as evidence of ambiguity. We need not consider the district court's change as evidence of ambiguity. We find ambiguity based on the wording of the contract, not the district court's adoption of different interpretations.

20

or parol evidence, summary declaratory judgment is inappropriate.");

*Mobile Acres, Inc. v. Kurata*, 508 P.2d 889, 895 (Kan. 1973) ("Where there is ambiguity in a written contract and extrinsic evidence is required to ascertain the intention of the parties, summary judgment should not be entered in the face of contradictory or conflicting evidence.").

### F. Middle Man was not entitled to judgment as a matter of law.

Middle Man argues that it should have been awarded judgment on the pleadings. But because the contract was ambiguous, Middle Man was entitled to a trial—not a judgment.

Middle Man makes three arguments for judgment as a matter of law even if the contract is ambiguous. We reject these arguments, concluding that construction of the ambiguous contract should be left for the trier of fact.

First, Middle Man argues that we should apply the canon of contra proferentem. Under this canon, an ambiguous contract is construed against the drafting party (Sprint). But it would be inappropriate to apply contra proferentem at this stage of the litigation. In Kansas, contra proferentem is typically applied by the factfinder as it considers extrinsic evidence bearing on the contract's meaning—not by the court as a matter

21

of law. *See, e.g.*, *Pattern Instructions Kansas - Civil*, Ch. 124.32 (Feb. 2016) ("When the terms of an insurance policy . . . are susceptible of more than one meaning, the policy provisions must be given the meaning which is most favorable to the policyholder."); *see also* Ethan J. Lieb & Steve Thel, *Contra Proferentem and the Role of the Jury in Contract Interpretation*, 87 Temp. L. Rev. 773, 786 (2015) ("[C]ourts clearly tend to admit extrinsic evidence on ambiguities first before relying on [contra proferentem]."). If we were to apply contra proferentem now, the factfinder could not interpret the contract based on the parties' intent. At a minimum, the parties should be allowed to present extrinsic evidence for the court to consider in a motion for summary judgment or at the trial. *See Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 298 P.3d 250, 964 (Kan. 2013) ("[I]f the language of a contract is ambiguous and the intent of the parties cannot be ascertained from undisputed extrinsic or parol evidence, summary declaratory judgment is inappropriate.").

Second, Middle Man invokes other canons of construction, arguing that we must

- apply the plain meaning of "Services" and "Devices," so that "Services" includes only those "Devices" that have active Sprint service and

- interpret "Devices on your account with us" to be narrower than "Devices" because to do otherwise would be to read the "on your account with us" language out of the contract.

22

These are simply arguments that Middle Man's interpretation of the contract is more reasonable than Sprint's. But we already rejected that view, concluding that the contract is ambiguous. And it is not our place to rewrite the parties' contract to conform to our own notions of reasonableness. *See Quenzer v. Quenzer*, 587 P.2d 880, 882 (Kan. 1978) ("This court . . . may not rewrite a contract or make a new contract for the parties under the guise of construction.").

Finally, Middle Man argues that its interpretation is supported by the public interest and the need to avoid an absurd result and illegality. But Middle Man forfeited these arguments by failing to present them to the district court. *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1110 (10th Cir. 2015). As a result, we decline to consider these arguments.

In these circumstances, we conclude that the district court correctly denied Middle Man's motion for judgment on the pleadings.

**4.    We decline to consider Middle Man's impaired-title argument because Middle Man first raised the argument in a Rule 59(e) motion.**

Finally, Middle Man argues that because Sprint conveys full title to the telephones, Sprint cannot prevent purchasers from reselling the telephones. In Middle Man's view, when a seller transfers full title to

23

goods, the seller cannot restrict the buyer's resale of those goods. If this argument is correct, the district court should not have granted summary judgment to Sprint on its breach-of-contract claim. But Middle Man waited to raise this argument until moving to alter or amend the judgment. At that point, the district court reasonably declined to address the argument. And we do not ordinarily entertain arguments made for the first time in a motion to alter or amend the judgment.

Middle Man takes conflicting stances over whether or not it is appealing the district court's Rule 59(e) order. In its notice of appeal, Middle Man included the district court's ruling on its motion to alter or amend in the list of orders being appealed. *See* Appellant's App'x at 744 (listing "the Memorandum and Order (Docket 173, entered April 14, 2015) denying defendant's Rule 59(e) motion to alter or amend the judgment."). But in its reply brief, Middle Man changed course, stating that it was "appealing the summary judgment ruling, not the Rule 59 ruling [addressing the motion to alter or amend]." Appellant's Reply Br. at 13. We may assume, for the sake of argument, that Middle Man has presented its impaired-title argument to challenge both the summary-judgment ruling and the ruling on the motion to alter or amend. Even with this assumption, we could not reverse the summary-judgment ruling based on Middle Man's impaired-title argument.

The district court rejected Middle Man's impaired-title argument on the ground that Middle Man could not raise a new argument in a motion to alter or amend. In reviewing the denial of that motion, we apply the abuse-of-discretion standard. *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1309 (10th Cir. 2014). A district court abuses its discretion when it (1) enters "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment" or (2) applies the wrong legal standard. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Rocky Mountain Christian Church v. Bd. of Cty. Cmm'rs*, 613 F.3d 1229, 1239-40 (10th Cir. 2010)); *id* at 1249 n.2.

The district court did not abuse its discretion in holding that Middle Man failed to timely raise its impaired-title argument. A motion to alter or amend the judgment "cannot be used to expand a judgment to encompass new issues which could have been raised prior to issuance of the judgment." *Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993). Middle Man did not make the impaired-title argument before moving to alter or amend.[9] Thus, the district court did not abuse its discretion in

[9] Middle Man argues that it did raise this issue before its motion to alter or amend the judgment. We disagree. In opposing Sprint's motion for partial summary judgment, Middle Man stated in the fact section that Middle Man had transferred title to its customers, "as Middle Man was permitted to do under the law as a result of holding title to the phone[s] free and clear." Appellant's App'x at 355. But in arguing against partial

declining to alter or amend the judgment based on the impaired-title argument.

The same is true of Middle Man's challenge to the summary-judgment ruling. Middle Man did not present its impaired-title argument in the summary-judgment proceedings. Without presentation of this argument, the district court can hardly be faulted for declining to consider the impaired-title argument when ruling on summary judgment. As a result, we decline to consider the merits of Middle Man's challenge to the summary-judgment ruling based on an argument not raised until Middle Man moved to alter or amend the judgment. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008) (declining to consider an appeal point involving an argument that had not been raised until the filing of a motion to alter or amend the judgment).

In these circumstances, we reject Middle Man's impaired-title argument.

---

summary judgment for Sprint, Middle Man did not (1) explain why it held title to the telephones free and clear or (2) discuss the property-law principles relied upon in this appeal.

**5.** **Disposition**

We reverse and remand with instructions to vacate the entry of judgment for Sprint and to conduct further proceedings consistent with this opinion.